PINK, superintendent, *v.* A. A. A. HIGHWAY EXPRESS INC. *et al.*

No. 13549.   JANUARY 16, 1941.   REHEARING DENIED FEBRUARY 14, 1941.

506

508

*Powell, Goldstein, Frazer & Murphy* and *Elliott Goldstein,* for plaintiff.

*Reynolds & Brandon, Howell & Post, Thomas R. R. Cobb, James C. Howard Jr., Bright, Brannen & Howard; Bryan, Richardson & Mobley; Hooper, Hooper & Miller; J. L. Flemister, Hirsch, Smith & Kilpatrick, A. S. Clay, J. E. Gortatowsky, William Woodruff, G. N. Bynum, R. Earl Camp, Joseph E. Webb, P. J. Smith, Carlisle Cobb, Erwin & Nix, Boykin & Boykin; Earle Norman, Martin, Martin & Snow,* and *Jones, Jones & Sparks,* for defendants.

GRICE, Justice. ■ The pronouncement made in the first head-note will not be discussed. See *Strickland* v. *Lowry National Bank,* 140 *Ga.* 653 (79 S. E. 539) ; *Anderson* v. *Anderson,* 150 *Ga.* 142 (103 S. E. 160).

■ Touching the proposition of law referred to in the second headnote, see *Swing* v. Humbird, 94 Minn. 1 (101 N. W. 938) ; Hawkins *v.* Glenn, 131 U. S. 319 (9 Sup. Ct. 739, 33 L. ed. 184) ; Great Western Tel. Co. *v.* Purdy, 162 U. S. 329 (16 L. ed. 810, 40 L. ed. 986) ; Glenn *v.* Liggett, 135 U. S. 533 (10 Sup. Ct. 867, 34 L. ed. 262) ; Selig *v.* Hamilton, 234 U. S. 652 (34 Sup. Ct. 926, 58 L. ed. 1518) ; and the authorities collected in Chandler *v.* Peketz, 297 U. S. 609 (56 Sup. Ct. 602, 180 L. ed. 881, and citations in the note). The rule referred to is based on the theory that in litigation to which the corporation is a party its stockholders are represented by it to the extent that they are bound by any judgment rendered against the corporation in so far as it relates to corporate matters; and that the action of the court in determining the necessity for, and fixing the amount of, the assessments, is merely performing a duty which would have fallen on its directors had it continued to be a going concern; the court substituting its decree for the formal call of the directors, which call is ordinarily a prerequisite to fixing an individual liability on the stockholders. As shown by the citations above, the same principle has been applied to mutual assessment insurance companies; but, as indicated above, it is not necessary to decide whether the principle contended for is sound.

■ The turning point in the case is whether or not the defendants, who were not parties to the original proceeding, are so far concluded by the decree rendered therein as to prevent them from showing that their relation to the corporation was not such as to subject them to liability for assessment. When we refer to their not being parties to the original proceeding, we mean that they were not personally served, and that they have not had their day in court for the purpose of asserting their non-liability. It is the insistence of the plaintiff, that these policyholders were represented in the New York litigation, and are bound by the decision of the court therein; and that while certain personal defenses are still available to them, they are not the type of defenses such as are here raised; that when it is admitted, as the demurrer does, that they were policyholders, they became members; and that the decree of the New York court adjudging that the members were liable to the assessments in the amount sued for was binding on them when sued by the superintendent of insurance seeking to recover a judgment therefor in personam against them. Let us bear in mind the rationale of the rule contended for, to wit, that the court of the domicile of an insolvent corporation the affairs of which are being administered by a receiver may determine that an assessment is necessary, and fix the amount of it. Although these defendants were not parties to the original proceeding, the corporation was. As to those policyholders not personally served in the New York court and who did not personally appear therein, all the decree could have done was to determine the necessity for and amount of the assessment, and to call on the members to pay. This was all the directors could have done; and this was at most all the court could do, unless the policyholders were made parties to that proceeding, so as to be personally bound by other matters adjudicated therein. If in that suit it was asserted that certain policyholders were members of the company and were liable in a certain amount because they were members, and such policyholders were not personally served and did not appear, an adjudication that they were liable because under the New York law they were members is not conclusive on them. Whether they were members or not was vital on the question of their liability to assessment. On such an issue they are not bound until they have had an opportunity to contest it.

■ Counsel for the plaintiff take the position that to deny the element of conclusiveness to the decree of the New York court upon the question of the liability of each of the defendants to assessments would be to refuse to give effect to the full-faith and credit-clause of the constitution of the United States. The answer to that contention is, that before that constitutional provision can become operative one must have had his day in court; and over against it we place the other guaranty, to wit, the due-process clause; and it is of the essence of due process that one must be given an opportunity to be heard. *Walton* v. *Davis,* 188 *Ga.* 56, 62 (2 S. E. 2d, 603), and cit. In Great Western Telegraph Co. *v.* Purdy, 162 U. S. 329 (supra), after holding that the order of assessment was conclusive and binding on every stockholder without personal notice to him, it was said : "But the order was not, and did not purport to be, a judgment against any one. It did not undertake to determine the question whether any particular stockholder was or was not liable in any amount. It did not merge the cause of action of the company against any stockholder on his contract of subscription, nor deprive him of the right, when sued for an assessment, to rely on any defense which he might have to an action upon that contract. In this action, therefore, brought by the receiver in the name of the company, as authorized by the order of assessment, to recover the sum supposed to be due from the defendant, he had the right to plead a release, or payment, or the statute of limitations, or any other defense, going to show that he was not liable upon his contract of subscription."

Their liability to assessment depends upon whether or not they became members of the company. A person can not be made a member or stockholder of a corporation without his consent. 18 C. J. S. § 478, note 42, and cit. It was incumbent on the plaintiff to show that these defendants became members, in order to subject them to the payment of the assessment, the necessity for and amount of which was determined by the decree of the court wherein the corporation had its domicile. As to this, all that is shown is that they purchased a policy in a mutual insurance company, organized under the laws of the State of New York, which laws provide that a policyholder is a member and liable to assessment. This is not sufficient. New York Life Insurance Co. *v.* Street (Tex. Civ. App.), 265 S. W. 397, and cit. Couch's Cyclopedia of Insurance Laws, § 251 et seq.

The Supreme Court of Minnesota had the identical question, in Swing v. Humbird, 94 Minn. 4 (101 N. W. 938). It was there ruled: "Action to recover upon an assessment of the policyholders of an insolvent mutual insurance company, made by a court having jurisdiction to wind up its affairs. *Held:* 1. Such assessment is not conclusive upon any policyholder as to the question whether his relation to the company was such as to subject him to liability for an assessment." In Shuey v. Adair, 24 Wash. 378 (64 Pac. 536), in answering the contention of the receiver that the order was conclusive even as to the liability of each stockholder for the amount assessed against him, the court observed: "But if this be true, it would seem there was little need for the present action. To give the order the force and effect here contended for is to give it the force and effect of a judgment, and there could be no reason why an execution should not issue directly upon the order without the further intervention of the courts."

It was ruled by the Court of Appeals of New York as follows: "An order of the United States district court directing an assessment upon the stockholders of a certain amount per share to meet a deficiency in the assets of a bankrupt corporation to meet its obligations to its creditors was not, in a subsequent action in a State court for the assessment, conclusive upon the existence or non-existence of an obligation on the part of the stockholders to pay the assessment." Southworth v. Morgan, 205 N. Y. 293 (98 N. E. 491, 51 L. R. A. (N. S.) 56). In the opinion it was said: "It is urged by the respondent, at this point, that the order of the United States district court directing the assessment of the shares of the defendant conclusively determined the validity and the amount of the assessment. It is true that the regularity and validity of the proceeding in that court and its conclusions can not be attacked in this action; but the existence or non-existence of an obligation on the part of the defendant to pay the assessment was not within the subject-matter of which that court took jurisdiction. To enable the plaintiff to enforce the liability of the delinquent shareholders to the extent only which the deficiency in the corporate assets required, and to effect parity of contribution between them, it was necessary that an account of the assets and debts, of the entire amount of the capital remaining unpaid upon the issued shares, and the part of the face value of his shares unpaid by each

stockholder, should be taken, and the aggregate assessment required equitably rated by the court, and it is upon those issues that its order is beyond attack in this action. Great Western Telegraph Co. *v*. Purdy, 162 U. S. 329, 16 Sup. Ct. 810, 40 L. ed. 986; Howarth *v*. Angle, 162 N. Y. 179, 56 N. E. 489, 47 L. R. A. 725. In the former case the court, speaking of an analogous order of a court of Illinois, said: 'But the order was not, and did not purport to be, a judgment against any one. It did not undertake to determine the question whether any particular stockholder was or was not liable in any amount. It did not merge the cause of action of the company against any stockholder on his contract of subscription, nor deprive him of the right, when sued for an assessment, to rely on any defense which he might have to an action upon that contract.'"

We find nothing in *Howard* v. *Glenn*, 85 *Ga*. 238, 264 (11 S. E. 610, 21 Am. St. R. 156), contrary to the above holdings. That was a suit against Glenn for his unpaid subscription to capital stock. In the opinion we find this: "In the present case the main issue was, whether the plaintiff in error was a subscriber to the stock of the National Express and Transportation Company. It was affirmatively alleged in the declaration that he was; *and if he was such subscriber* [italics ours], his liability under the facts of the case was clear and unmistakable." So we may concede here, that if the defendants were members of the corporation, they would be liable. But, as in that case so in this, whether they were or not, was a proper inquiry in the present suit.

The oral arguments in the instant case were unusually strong, and the briefs filed in support thereof were excellent. It would unduly prolong this opinion to notice all branches of the argument or to analyze all the authorities cited. All of them have been considered and examined. We may, however, make a brief reference to some of the stronger of them. Stone *v*. Old Colony St. Ry. Co., 212 Mass. 459 (99 N. E. 218), is relied on. That decision, while holding that the decree of a foreign court in receivership proceedings against an insolvent insurance company within its jurisdiction, levying an assessment on policyholders, is conclusive, in a suit against a policyholder in another State, of the receiver's authority to enforce any contract liability of the defendant for the assessment, and of the amount required, also holds that it does not preclude a defendant from asserting that it is not liable.

In Stone *v*. Penn Yan, K. P. & B. Ry., 197 N. Y. 279 (90 N. E. 843), also relied upon, the ruling was: "Where policies issued by a foreign assessment-insurance company stipulated that if the premium charged is insufficient to pay losses the directors might charge a pro rata additional sum to make up the deficiency, insured, though not a party in insolvency proceedings against insurer, was bound by an order of the foreign court directing an assessment so far as the necessity for making the assessment was determined; but the decree was subject to direct attack in a suit by the foreign receiver, and insured could show that it was not liable either by reason of payment or of release or of running of limitations or of any other legal defense." Here again, it is to be observed, the New York court held that the policyholder was by the decree concluded only on the question as to the necessity for making the assessment. Nor did the ruling in Longworthy *v*. Gardner, 74 Minn. 325 (77 N. W. 207), strongly relied on by the plaintiff, go any farther. The decision in Supreme Council of the Royal Arcanum *v*. Green, 237 U. S. 531 (35 Sup. Ct. 724, 59 L. ed. 1089, L. R. A. 1916A, 771), recognizes the same distinction as to what matters the decree of the foreign court is held to be conclusive.

Having determined that these policyholders are not by the New York decree concluded on the question as to whether or not they became members and as such liable to assessment, the next inquiry is this: Was there anything in their contracts with the companies, to wit, the policies themselves, which constituted them members? This involves a proper construction of the contract; that is, what is its legal import? In ascertaining this, the law of what State shall be applied? The policy is that of a company chartered in the State of New York, but a contract of insurance is made, not where the policy was executed, but where it was in fact delivered. Swing *v*. Dayton, 196 N. Y. 503 (89 N. E. 1113); Mutual Life Insurance Co. *v*. Hill, 193 U. S. 551 (24 Sup. Ct. 538, 48 L. ed. 788); McClement *v*. Supreme Court I. O. F., 88 Misc. 475 (152 N. Y. Supp. 136), and the many other authorities there cited. If the question would ordinarily be referable to the lex loci contractus, it is enough to say that as to where the contract was made the petition is silent, leaving us without chart or compass. For that reason also we are not here concerned with the rule that, as to a contract made in another State that was one

of the original thirteen, or carved from the territory of one of them, and sued upon in this State, we will presume the common law to be of force in such other State. *Trustees of Jesse Parker Williams Hospital* v. *Nisbet,* 189 *Ga.* 807 (7 S. E. 2d, 737) ; *Alropa Corporation* v. *Pomerance,* 190 *Ga.* 1 (8 S. E. 2d, 62). Nor whether the court of the forum will decline to apply the law of the situs when the application of such law would contravene the established public policy of the forum. Hartford Accident & Indemnity Co. *v.* Delta & Pine Land Co., 292 U. S. 143 (54 Sup. Ct. 634, 78 L. ed. 1468, 92 A. L. R. 928, and cit.) ; *Ulman &c. Woolen Co.* v. *Magill,* 155 *Ga.* 555 (117 S. E. 657), and cit. In such a situation, we find the correct rule stated in Pritchard *v.* Norton, 106 U. S. 124 (1 Sup. Ct. 102, 23 L. ed. 248) : "The rule deduced by Mr. Wharton, Conflict of Laws, section 401, as best harmonizing the authorities and effecting the most judicious result, and which was cited approvingly by Mr. Justice Hunt in Scudder *v.* Bank, 91 U. S. 406, 411 [23 L. ed. 245], is that 'Obligations in respect to the mode of their solemnization are subject to the rule locus regit actum; in respect to their interpretation, to the lex loci contractus; in respect to the mode of their performance, to the law of the place of their performance. But the lex fori determines when and how such laws, when foreign, are to be adopted, and, in all cases not specified, supplies the applicatory law.' This, it will be observed, extends the operation of the lex fori beyond the process and remedy, so as to embrace the whole of that residuum which can not be referred to other laws. And this conclusion is obviously just; for whatever can not, from the nature of the case, be referred to any other law, must be determined by the tribunal having jurisdiction of the litigation, according to the law of its own locality." In addition to planting the rule on the basis of necessity, it can safely rest on still another foundation, to wit, it ought to be assumed that if it be true that the contract was made elsewhere, and if the law of such other State be different from that of the forum, and more favorable to plaintiff, such facts would have been made to appear from the petition.

■ "In determining whether an insurance contract is one on the assessment plan, the articles of incorporation and the by-laws of the company are not to be considered unless they are made a part of the policy." Lee *v.* Missouri State Life Insurance Co. (Mo. App.), 238 S. W. 858. "One purchasing policy of mutual

insurance company *held* not by that act alone to have become a stockholder in company, chargeable with notice of mutual features in its charter. . . Status of stockholder in mutual insurance company can arise only by consent expressed or implied." New York Life Ins. Co. v. Street (Tex. Civ. App.), 265 S. W. 397.

There are numerous cases holding that a mutual insurance company may issue policies on a cash premium and to policyholders who do not become members. Typical of these are Buck v. Ross, 59 S. D. 422 (240 N. W. 858); Johnson v. School District, 128 Oregon, 9 (273 Pac. 386). See Greenlaw v. Aroostock County Patrons Mutual Fire Ins. Co., 117 Me. 514 (105 Atl. 116); New York Life Ins. Co. v. Street (Tex. Civ. App.), 265 S. W. 397; Watts v. Equitable Mutual Life Assn., 111 Iowa, 90 (82 N. W. 441); Lee v. Missouri State Life Ins. Co. (Mo. App.), supra. See particularly Dwinnell v. Kramer, 87 Minn. 392 (92 N. W. 227), where it was held that the policyholder in such company is liable to assessment—"For losses not simply in accordance with his contract. Any such company may fix the contingent mutual liability of its policyholder not merely by its by-laws, but by its policies and the 'total amount of the liability of the policyholder shall be plainly and legibly stated in the face of each policy.' . . We accordingly hold that the defendants are not liable upon this policy, contingently or otherwise, in any amount in excess of the cash premium therein named." Many other authorities might be cited, and the decision extended, but it does not seem necessary. In a recent case, brought by the same plaintiff in the district court of the United States for the middle district of Georgia, a similar issue was involved, and the decision therein is in harmony with the views herein expressed. Pink v. Georgia Stages Inc., 35 Fed. Supp. 437. Our conclusion is that the defendants by merely accepting these policies did not thereby become members so as to subject them to assessment.

The notation on the back of the policy referred to in the preceding statement of facts was not a part of the policy, and therefore not a part of the contract. On the contrary, the policy specifically negatives this. 14 R. C. L. 934. The terms of the policy not only fail to put the defendant on notice that he was accepting a policy in a company which was subject to assessments under laws of the State of New York, but fail in any wise to suggest

that the company issuing the policy was an assessment company at all. The only provisions in the policy which throw any light upon the nature and character of the company are such as would merely indicate that it was mutual in character, and that the policy-holders would be entitled to participate in the profits and surplus which might be derived from the operation of the company.'

6. Since no other contract appears to which the defendants were parties, it follows that the suit was properly dismissed on general demurrer. *Judgment affirmed.* *All the Justices concur.*